Edward G. **ROBICHAUX**

v.

**WARDEN, FEDERAL DETENTION CENTER.**

No. CV 94–1093.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Jan. 27, 1995.

---

Edward G. Robichaux, Oakdale, LA, pro se.

Carl E. Perry, U.S. Attorney's Office, Lafayette, LA, for defendant.

### JUDGMENT

TRIMBLE, District Judge.

For the reasons stated in the Report and Recommendation of the Magistrate Judge previously filed herein and after an independent review of the record, and a *de novo* determination of the issues, and consideration of the objections filed herein, and having determined that the findings are correct under applicable law;  it is

ORDERED that the petition of Edward G. Robichaux be and it is hereby dismissed with prejudice.

*REPORT AND RECOMMENDATION*

WILSON, United States Magistrate Judge.

Presently before the court is a petition for a writ of *habeas corpus* filed by *pro se* petitioner Edward G. Robichaux (Robichaux) pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

There is no dispute as to the material facts. Robichaux was convicted on February 6, 1992 of three counts of mail fraud and fraud by wire in violation of 18 U.S.C. § 1341 and 18 U.S.C. §§ 1343 & 2. See Exhibit A attached to petition. After conviction and before sentencing Robichaux was released to the custody of the Volunteers of America Community Correctional Center (VOA) pursuant to 18 U.S.C. § 3143(a)(1). He was placed in the most restrictive component and was only allowed to leave to meet with his attorney or probation officer, to appear in court, and to obtain medical treatment. ¶ 9 of the petition and Exhibit E. Robichaux remained in the VOA halfway house until June 10, 1992 when he transported himself to a federal prison to begin serving his sentence.

Robichaux has filed the present action seeking a determination that he is entitled to credit against his sentence for the days he spent confined to the VOA halfway house.[1] He contends that such a credit is required by 18 U.S.C. § 3585(b) and, even if not required by statute, is required by the equal protection component of Fifth Amendment due process. This court concludes that neither contention has merit.

18 U.S.C. § 3585(b) provides, in pertinent part:

**(b) Credit for prior custody.**

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

> (1) as a result of the offense for which the sentence was imposed; ...

> ....

that has not been credited against another sentence.

■ Thus, whether or not Section 3585 entitles Robichaux to the credit he seeks turns on whether his confinement to a halfway house as a condition of his release constituted "official detention."[2] Congress chose not to expressly define "official detention." Furthermore, the legislative history fails to provide clear insight as to the intended meaning. *See Moreland v. U.S.*, 968 F.2d 655, 657 (8th Cir.1992) (*en banc*); *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir.1990). However, this court concludes that Robichaux's confinement to the VOA halfway house was not "official detention" within the meaning of Section 3585.

Section 3585(b) is part of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat. 1843 (1984). This Act also contained the provision which is now 18 U.S.C. § 3142 dealing with pretrial "detention." 18 U.S.C. § 3141 *et seq.* provides for two alternatives: detention or release. In the case of detention the accused is placed in the custody of the Attorney General for confinement in a corrections facility. 18 U.S.C. § 3142(i). If released the accused is restricted by conditions placed on him. If necessary, these conditions may include third party custody as was the case with Robichaux. 18 U.S.C. § 3142(c). Reading Section 3585 in conjunction with Section 3142 suggests that "official detention" includes "detention" under 18 U.S.C. § 3141 *et seq.* but does not

---

1. Robichaux claims that he is entitled to 153 days credit. It appears that he only spent 125 days in the halfway house. However, the discrepancy is not material here.

2. Section 3585 is applicable to crimes committed on or after November 1, 1987 and, therefore, applies in the present case. The former 18 U.S.C. § 3568 is applicable to crimes committed prior to November 1, 1987. Section 3568 mandated credit for days spent "in custody" while section 3585 refers to days spent in "official detention." The Fifth Circuit has concluded that there is no substantive difference. *U.S. v. Cleto*, 956 F.2d 83 (5th Cir.1992); *Pinedo v. U.S.*, 955 F.2d 12, 14 (5th Cir.1992); *compare United States v. Wilson*, 503 U.S. 329, ——, 112 S.Ct. 1351, 1355, 117 L.Ed.2d 593 (1992) (suggesting that the change in terminology was significant.).

include a "release on conditions." *Moreland v. U.S., supra* at 657 n. 5; *U.S. v. Becak,* 954 F.2d 386, 388 (6th Cir.1992); See also *Moreland, supra.* at 661–63 (Loken, J., concurring). The differences associated with the authority of the custodian provide a rationale basis for applying this distinction in the context of 18 U.S.C. § 3585. *See Randall v. Whelan,* 938 F.2d 522, 525–26 (4th Cir.1991).

The conclusion that "official detention" does not include a release into the custody of a third party is also consistent with Fifth Circuit cases interpreting 18 U.S.C. § 3568 and 18 U.S.C. § 3585. The Fifth Circuit has repeatedly held that "custody" and "official detention" does not include time spent under restrictive conditions of release on bail. *U.S. v. Cleto,* 956 F.2d 83, 84 (5th Cir.1992); *Pinedo v. U.S.,* 955 F.2d 12 (5th Cir.1992); *U.S. v. Mares,* 868 F.2d 151, 152 (5th Cir.1989). Rather, "custody" and "official detention" have been held to be "characterized by incarceration"; and "credit does not accrue on a federal sentence until the prisoner is received at the place of imprisonment." (internal quotes deleted) *U.S. v. Cleto, supra; U.S. v. Smith,* 869 F.2d 835 (5th Cir.1989); *Polakoff v. United States,* 489 F.2d 727 (5th Cir. 1974). Arguably, these cases can be distinguished on their facts since none dealt with conditions of release as restrictive as those in the present case. However, the language of their holdings is broad and clear. There is nothing to suggest that their application was dependent upon the particular restrictive conditions utilized.

The conclusion reached here is also supported by the greater weight of decisions from other circuits. *Moreland v. U.S.,* 968 F.2d 655 (8th Cir.1992) *(en banc); U.S. v. Becak,* 954 F.2d 386 (6th Cir.1992); *U.S. v. Zackular,* 945 F.2d 423 (1st Cir.1991); *Randall v. Whelan,* 938 F.2d 522 (4th Cir. 1991); *U.S. v. Woods,* 888 F.2d 653 (10th Cir.1989); *Ramsey v. Brennan,* 878 F.2d 995 (7th Cir.1989). Only the Ninth and Third Circuits have come to a clearly inconsistent conclusion. *Mills v. Taylor,* 967 F.2d 1397 (9th Cir.1992); *Koray v. Sizer,* 21 F.3d 558 (3rd Cir.1994). *See also Johnson v. Smith,* 696 F.2d 1334 (11th Cir.1983).

The construction here given to "official detention" also has practical benefits. It provides a bright line rule which benefits all by providing greater certainty. At the same time the burden on the judicial system is minimized. The Ninth Circuit's interpretation focuses on the degree of restraint as opposed to the authority of the custodian. The degree of restraint will have virtually infinite variations. This will increase the burden on the judicial system resulting in more requests for judicial review that require the court to make fact sensitive inquiries. An inescapable consequence will be inconsistent decisions and increased uncertainty.

At best, the meaning of "official detention" in Section 3585 is ambiguous. This is clearly demonstrated by the split among the circuits relative to its meaning. In *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) the Supreme Court held that where a statute is silent or ambiguous as to a particular issue the courts should defer to the administering agency's interpretation where that interpretation is a "permissible construction of the statute."

When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail. In such a case, federal judges—who have no constituency—have a duty to respect legitimate policy choices made by those who do. The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones: "Our Constitution vests such responsibilities in the political branches." (citation omitted) 467 U.S. at 866, 104 S.Ct. at 2793.

The responsibility for calculating jail-time credits falls on the Bureau of Prisons (BOP). *United States v. Wilson,* 503 U.S. 329, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992). The BOP policy on credit for presentence time spent in a halfway house is set out in Program Statement 5880.28 (February 21,

1992). The BOP has clearly taken the position that "official detention" does not include time spent in a halfway house as a condition of bail or bond. The BOP's interpretation focuses on the legal authority of the custodian rather than the degree of restraint. The considerations already discussed lead this court to conclude that the BOP's interpretation is a reasonable and permissible construction of the term "official detention" found in 18 U.S.C. § 3585. Accordingly, the BOP's interpretation is entitled to deference from this court.[3]

■ Robichaux also contends that failure to give him the credit he seeks violates his rights under the equal protection component of the Due Process clause of the Fifth Amendment. His argument is based upon the fact that defendants confined under the same restrictions as he in the same halfway house are given credit for the time spent in the halfway house after sentencing. Robichaux does not contend that a suspect classification or personal right protected by the Constitution is involved that would necessitate a "strict scrutiny" analysis. The applicable equal protection analysis thus requires a determination of whether: (1) Robichaux was, prior to sentencing, "similarly situated" with defendants already sentenced; and (2) if so, was there a rational basis for the disparate treatment. *City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439–40, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

■ Robichaux's equal protection claim fails to clear even the first hurdle. He argues that the fact that he was subject to the same physical restrictions as postsentence defendant establishes that he was "similarly situated" for equal protection purposes. This court does not agree. Robichaux was not "similarly situated" to postsentence defendants because his legal status was different. *Fraley v. U.S. Bureau of Prisons*, 1 F.3d 924, 926 (9th Cir.1993); *Moreland v. U.S., supra* at 660–61; *U.S. v. Edwards*, 960 F.2d 278, 284 (2nd Cir.1992); *U.S. v. Woods, supra* at 656. *See also Ramsey v. Brennan,*

*supra* at 997. *Johnson v. Smith,* 696 F.2d 1334 (11th Cir.1983) is of no help to Robichaux. There the court did not have to determine if the petitioner was similarly situated to postsentence defendants because the government had conceded that they were similarly situated in the district court. Robichaux's equal protection argument has no merit.

Accordingly, it is recommended that Robichaux's petition be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS ON APPEAL.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 19th day of December, 1994.

---

**3.** Robichaux has also argued that the "rule of lenity" dictates that he be given credit citing *United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971). This is not so.

We are not here dealing with an ambiguity concerning the "ambit" of a criminal statute and the policies underlying this principle have no application here.